UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


ALEJANDRO RIO CAMACHO,

    Petitioner,

v.                                                  CASE NO:  8:13-CV-1172-T-30MAP

SECRETARY, DEPARTMENT OF
CORRECTIONS and ATTORNEY
GENERAL, STATE OF FLORIDA,

    Respondents.
_____/

## ORDER

Petitioner, an inmate in the Florida penal system proceeding *pro se*, brings this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. #1).  The Court has considered the petition, Respondents' Response (Dkt. #6) and Petitioner's Reply (Dkt. #9). Upon consideration of the memoranda and case law, the Court concludes that the motion should be denied.

Camacho raises only one ground in his timely filed petition: "The state trial courts erred in denying Petitioner's claim that his Fourth Amendment protection against illegal search and seizure was violated."  He complains that the state trial court was in error when it denied his motion to suppress the three pounds of methamphetamine found in his vehicle after a traffic stop.  The state trial court held an evidentiary hearing on the motion to suppress, made a finding of fact that probable cause existed for the traffic stop and that the

contraband would have been inevitably discovered subject to Camacho's valid arrest, and denied the motion. Camacho then pled guilty and reserved the right to appeal the denial of his motion to suppress. The state appellate court *per curiam* affirmed without written decision. *Camacho v. State*, 109 So. 3d 792 (Fla. 2d DCA 2012) [table].

The threshold issue for consideration is whether federal habeas corpus consideration is precluded in this case by *Stone v. Powell*, 428 U.S. 465 (1976). To place this issue in context, the Court will first set forth the background facts as described by Camacho in his petition:

> On September 9, 2010, at 8:15 A.M., Florida Highway Trooper Laneses was contacted by fellow Trooper Steve Varnell, Sr., advising him of a vehicle they were going to stop for Special Agent Dan McDonough with the Drug Enforcement Administration (DEA).
>
> Trooper Laneses was informed that DEA Agents were following the vehicle in question and that this vehicle could possibly contain an amount of illegal contraband. Trooper Laneses was given a description of the suspected vehicle by Trooper Varnell, Sr., i.e. a green 1998 Mazda 626 with a florida tag H80-4JK.
>
> Trooper Laneses reported that at 10:27 A.M. he approached the vehicle from behind and observed the following illegal and defective equipment on the vehicle driven by an unrestrained white male:
>
> > i.   Brake light out on the vehicle.
> >
> > ii.  Windshield tint below the ASI line.
> >
> > iii. Improper expiration decal displayed in the upper left hand corner of the tag.
>
> Prior to conducting the traffic stop, Trooper Laneses ran a check on the vehicle and discovered that the registered owner had a suspended driver's license. The

registered owner of the vehicle was Rafael Rios Camacho, Alejandro Camacho's brother.

Laneses pulled the vehicle over and approached the Mazda, opened the passenger door, and asked Alejandro Camacho for his driver's license.

Upon observation of A. Camacho, it was obvious that he was not the registered owner of the Mazda.

According to Trooper Laneses, Camacho stated in English that his driver's license was suspended, and Laneses directed Camacho to step out of the Mazda. Laneses conducted a pat down which he described as being consensual, based on the fact that Camacho nodded affirmatively when asked in English if he would consent to a person search.

The Trooper also alleged that Camacho consented to allowing him to open the Defendant's wallet where he discovered a fraudulent Mexican ID card and a legitimate Mexican driver's license. Unsure of Camacho's true identity, Laneses ran a latent print check using a portable Rapid ID Unit.

While waiting for the results of the Rapid ID, Trooper Varnell arrived on the scene and Laneses requested him to conduct a vehicle sniff with his K-9 named Draco while he "began completing my uniform traffic citation." According to Laneses, before he could complete the citation or had received results from the Rapid ID, K-9 Draco gave a positive alert on the vehicle. A subsequent search of the vehicle yielded three bags of methamphetamine weighing approximately one pound each. Camacho was arrested and charged with trafficking in methamphetamines and having no valid driver's license.

Petitioner contends that the stop was illegal, whereas it was pretextual and unnecessarily prolonged. The state courts' denials of his motion to suppress evidence based on the illegal search and seizure and appeal thereto, was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States: and was based on an unreasonable determination of the facts of the case in light of the evidence presented in the state court proceedings.

Even before seeing the green Mazda, Trooper Laneses determined that he was going to stop the car and search it, regardless of whether he had probable cause. This decision was made long before ever seeing the vehicle. The Trooper was told by a DEA agent that the car was traveling in a specific

>   direction, and may possibly contain some contraband. The trooper was given the license number of the car and was told that a white male was driving the car. Petitioner Camacho is Hispanic.
>
>   The Trooper said he then pulled Mr. Camacho over based on a defective brake light, windshield tint, and the improper placement of the decal.

Dkt. #1, pp. 5-7.

The state court held an evidentiary hearing on Camacho's motion to suppress. When an evidentiary hearing has been held at the state level, the Eleventh Circuit describes the *Stone v. Powell* issue as follows:

>   "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone*, 428 U.S. at 494, 96 S.Ct. at 3052. We have interpreted the phrase "opportunity for full and fair litigation" to "mean[ ] just that: an opportunity.' *Lawhorn v. Allen*, 519 F.3d 1272, 1287 (11th Cir. 2008) (quoting *Caver v. Alabama*, 577 F.2d 1188, 1192 (5th Cir. 1978)). In *Caver*, we have explained that "if state procedures afford the defendant in a criminal case the opportunity to litigate whether evidence obtained in violation of the fourth amendment should be excluded, and if that opportunity to litigate fourth amendment issues is 'full and fair[,]' ... then *Stone v. Powell* precludes federal habeas corpus consideration of those issues whether or not the defendant avails himself of that opportunity." 577 F.2d at 1193.
>
>   A state does not afford a defendant a full and fair opportunity to litigate the validity of a search under the Fourth Amendment when the state courts fail to make essential findings of fact. In *Tukes v. Dugger*, we addressed whether *Stone* foreclosed review of the validity of a search when the defendant presented his argument but the state courts failed to make findings of fact to resolve that argument. 911 F.2d 508, 513-14 (11th Cir. 1990). We concluded that the state courts had failed to afford the defendant a full and fair opportunity to litigate the validity of the search when they did not make findings of fact about whether the defendant had invoked his right to counsel or was in custody when he consented to the search of his home. We stated, "The trial court's failure to make explicit findings on matters essential to the

> fourth amendment issue, combined with the fact that the state appellate court issued only a summary affirmance, precludes a conclusion in this case that the state provided the meaningful appellate review necessary to erect a *Stone v. Powell* bar to our review of the claim." *Id*. at 514.

*Hearn v. Florida*, 326 Fed. Appx. 519, 521-22 (11th Cir. 2009).

The issue then is whether the state courts failed to make essential findings of fact such that Camacho received a "full and fair opportunity" to litigate his motion. Camacho admits that "the state trial court made a detailed factual ruling when denying his motion." Dkt. #9, p. 3. But Camacho argues that when the state appellate court affirmed *per curiam*, it precluded him from seeking discretionary review from the Florida Supreme Court. At bottom, Camacho contends that whenever the state appellate court issues a *per curiam* affirmance of an order denying a motion to suppress, a defendant is entitled to circumvent the stricture of *Stone v. Powell*.

Camacho misperceives the holding of the Eleventh Circuit. *Stone v. Powell* precludes this Court from entertaining a Fourth Amendment habeas claim unless both the state trial court and the appellate court failed to make essential findings of fact required to fairly resolve the motion to suppress. Where the state trial court does make those findings of fact, this Court may not entertain the Fourth Amendment issue on habeas relief.

In *Hearn*, the state trial court summarily denied Hearn's motion to suppress without reconciling the key factual dispute concerning the affidavit supporting the search warrant. This summary denial was coupled with a summary affirmance by the appellate court. In *Tukes*, the trial court failed to make explicit findings on matters essential to the Fourth

Amendment issue and the appellate court issued a summary affirmance. That is not the case here.

Camacho was provided with a full evidentiary hearing on his motion. Testimony was taken from witnesses and the state trial court made explicit findings of fact. It found there was probable cause to conduct a traffic stop of Camacho, and it found that the methamphetamine would have been found in any event in an inventory search after Camacho's arrest for driving on a suspended license. This evidentiary hearing and findings of fact afforded Camacho the full and fair opportunity to litigate his Fourth Amendment claim required by *Stone v. Powell*. Therefore, this Court is precluded from entertaining his claim on habeas review.

Having concluded this Court may not entertain Camacho's claim, it will nevertheless, by way of explanation only, briefly touch on the merits. Camacho claims his Constitutioanl rights were violated because the traffic stop was pretextural. He asserts the real reason he was stopped was because of a suspicion that he was carrying contraband. Under federal law, a court is not to look at the subjective intent of the arresting officer, but rather at the objective circumstances supporting probable cause. As the Eleventh Circuit stated in *United States v. Harris*:

> "The Fourth Amendment protects individuals from unreasonable search and seizure." *Chanthasouxat*, 342 F.3d at 1275. A traffic stop, however, is constitutional if it is either based upon probable cause to believe a traffic violation has occurred or justified by reasonable suspicion in accordance with *Terry*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. *Chanthasouxat*, 342 F.3d at 1275. When determining whether an officer had probable cause to believe that a traffic violation occurred, the "officer's motive in making the traffic stop

> does not invalidate what is otherwise objectively justifiable behavior under the Fourth Amendment." *United States v. Simmons*, 172 F.3d 775, 778 (11th Cir. 1999) (quotation omitted). The Constitution also permits police officers to conduct a brief investigatory stop, *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), "if they have a reasonable, articulable suspicion based on objective facts that" an individual is engaged in criminal activity. *United States v. Powell*, 222 F.3d 913, 917 (11th Cir. 2000). A determination of reasonable suspicion is based on the totality of the circumstances, and "[i]t does not require officers to catch the suspect in a crime. Instead, [a] reasonable suspicion of criminal activity may be formed by observing exclusively legal activity." *United States v. Acosta*, 363 F.3d 1141, 1145 (11th Cir. 2004) (citations omitted). Additionally, the issue is not whether the particular officer involved "actually and subjectively had the pertinent reasonable suspicion, but whether, given the circumstances, reasonable suspicion objectively existed to justify [the investigatory stop]." *United States v. Nunez*, 455 F.3d 1223, 1226 (11th Cir. 2006).

*U.S. v. Harris*, 526 F. 3d 1334, 1337-38 (2008).

## **CONCLUSION**

*Stone v. Powell*, *Id.*, precludes this claim from federal habeas review. Accordingly, Petitioner's claim will be denied.

It is therefore ORDERED AND ADJUDGED that:

1. The petition for writ of habeas corpus (Dkt. #1) is DENIED.

2. The Clerk is directed to enter judgment in favor of Respondents and against the Petitioner, terminate any pending motions, and close this file.

### CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court

must first issue a certificate of appealability (CERTIFICATE OF APPEALABILITY). *Id.* "A [CERTIFICATE OF APPEALABILITY] may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

**DONE** and **ORDERED** in Tampa, Florida on October 11, 2013.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies Furnished To**:
Counsel/Parties of Record

*F:\Docs\2013\13-cv-1172 deny 2254.wpd*